# UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DARRIN MALSACK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NORTHLAND RESTAURANT GROUP, LLC; and DOES 1 to 25,<br><br>Defendants. | Case No. 23-cv-1637<br><br>**NATIONWIDE**<br><br>**CLASS ACTION COMPLAINT** |

## NATIONWIDE CLASS ACTION COMPLAINT

COMES NOW, Plaintiff DARRIN MALSACK ("Plaintiff" or "Mr. Malsack"), on behalf of himself and all others similarly situated, and asserts as follows:

## INTRODUCTION

1. Mr. Malsack, a person with a mobility disability who use a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants, asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendant Northland Restaurant Group, LLC, and DOES 1 through 25 (collectively, "Defendants") collectively own, lease, and/or operate at least eighty-one (81) Hardee's restaurants across multiple states, including, Wisconsin, North Dakota, South Dakota, Minnesota, Michigan, Indiana, Illinois, Indiana, and Iowa. Plaintiff's claims arise from own his experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by Defendants ("Defendants'

facilities"), and from site investigations at seven (7) of Defendants' facilities also finding excessive sloping conditions.

2. Plaintiff asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance policies, practices and/or procedures, which fail to ensure compliance with the sloping requirements of the ADA's implementing regulations. *See* 28 C.F.R. §§ 36.101 *et seq*.

3. The ADA expressly authorizes the injunctive relief aimed at modification of **existing** policies, practices, or procedures that Plaintiff seeks in this action. In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…
>
> 42 U.S.C. § 12188(a)(2).

4. Based on the extensive factual investigation performed by Plaintiff's investigators, he believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that the Defendants' existing internal maintenance policies, practices and/or procedures (discussed at ¶¶ 18-25 below) are inadequate and must be modified. 42 U.S.C. § 12188(a)(2).

5. Plaintiff brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within in the Parking Areas of their facilities, and (ii) modify its existing policies, practices and/or procedures to ensure that its facilities comply with the ADA implementing regulations' excessive sloping requirements. 28 C.F.R. §§ 36.101 *et seq*.

2

Case 2:23-cv-01637-SCD    Filed 12/06/23    Page 2 of 14    Document 1

6. Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a. Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

   b. Defendants modify its existing policies, practices and/or procedures to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

   c. Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 6.a. and 6.b. has been implemented and will remain in place.

7. Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

8. Plaintiff Darrin Malsack is, and at all times relevant hereto was, a resident of Milwaukee, Wisconsin. In 2017, Plaintiff was involved in a motor vehicle accident that caused fractures in his C5-C7 spinal cord. As a result, Plaintiff uses a wheelchair for mobility.

9. Mr. Malsack is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

10. Defendant Northland Restaurant Group, LLC, is, and at all relevant times was a Wisconsin corporation, doing business in Wisconsin, as the owner, lessee, and/or operator of dozens of Hardee's restaurants. Defendant's principal place of business is located at 3112 Golf Road, Eau Claire, Wisconsin, 54701-8013.

11. The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 25, are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to assert their true names and capacities when known. He is informed and believe and thereon allege that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

12. Plaintiff asserts that Defendants, including DOE Defendants, and each of them at all times mentioned in this Complaint were the alter egos, affiliates, agents and/or employees and/or employers of their co-Defendants, under shared management, ownership, and common control of each other, and part of a single franchise group, and in doing the things alleged in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their co-Defendants.

13. Plaintiff is further informed and believes, and based thereon alleges that Defendants collectively own, lease, and/or operate at least eighty-one (81) Hardee's restaurants across multiple states, including, Wisconsin, North Dakota, South Dakota, Minnesota, Michigan, Indiana, Illinois, Indiana, and Iowa, as described herein.

14. Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

### Mr. Malsack Has Been Denied Full and Equal Access to Defendants' Facilities

15. Mr. Malsack visited Defendants' facilities located at 1311 Rose Street, LaCrosse, Wisconsin, where he experienced unnecessary difficulty due to the unlawful sloping conditions in Defendants' purportedly accessible parking areas. Specifically, the parking facilities featured excessive sloping conditions which violated federal regulations, as set forth in more detail below.

16. Despite this difficulty and risk, Mr. Malsack plans to return to Defendants' facilities. Mr. Malsack often travels to the area for a variety of reasons. On September 19, 2023, Mr. Malsack traveled through the area returning from a fishing trip. Mr. Malsack regulary drives through the area to attend hunting events and visit friends in the nearby areas, at least a couple of times a month. He often stops for Hardee's on these trips due the convenience of the location, his need to take breaks when driving, and his preference Hardee's food. Mr. Malsack intends to dine at Defendants' Rose Street facility during what he expects to be numerous future visits to the area. Furthermore, Plaintiff intends to return to Defendants' facility to ascertain whether it remains in violation of the ADA.

17. As a result of Defendants' non-compliance with the ADA, Mr. Malsack's ability to access Defendants' facilities has been significantly impeded and he will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination he has previously encountered there.

### Defendants Repeatedly Deny Individuals with Disabilities Full and Equal Access to Defendants' Facilities

18. As the owner and/or operator of their facilities, Defendants employ centralized policies, practices, and/or procedures with regard to the alteration, maintenance, and operation of their facilities.

19. Plaintiff is informed and believes, and based thereon alleges that, as a Hardee's franchisee, Defendants utilize a Hardee's Operation Procedures Manual (the "OPM") issued by the franchisor when the franchise disclosure document ("FDD") is signed. The Hardee's franchise disclosure document that Defendants are subject to is similar, if not identical, to a previous version found publicly at https://www.restfinance.com/app/pdf/fdd/Hardees.pdf. It is Plaintiff's belief that the OPM contains the franchisee's obligations regarding the required standards and specifications and the franchisee agrees to comply with the OPM and any "new or changed section." FDD, p.40-41.

20. Pursuant to the FDD, Defendants are provided with the OPM and all the accompanying materials, that provide the standards that the franchisee is required to follow—including "detailed standards, specifications, instructions, requirements, methods and procedures for management and operation of the Franchised Restaurant." FDD, p.179. Specifically, the franchise agreement states, in relevant part:

**6. OPERATION PROCEDURES MANUAL**

. . .

> The OPM contains detailed standards, specifications, instructions, requirements, methods and procedures for management and operation of the Franchised Restaurant. The OPM also may relate to the selection, purchase, storage, preparation, packaging, ingredients, recipes, service and sale of all products and beverages sold at the Franchised Restaurant; management and employee training; marketing, advertising and sales promotions; maintenance and repair of the Franchised Restaurant building, grounds, equipment, graphics, signs, interior and exterior decor items, fixtures and furnishings; employee dress attire and appearance standards; menu concept and graphics; and accounting, bookkeeping, records retention and other business systems, procedures and operations. Franchisee agrees at all times to operate the Franchised Restaurant in strict conformity with the OPM;

to maintain the OPM at the Franchised Restaurant; to not reproduce the OPM or any part of it; and to treat the OPM as confidential and proprietary, and, to disclose the contents of the OPM only to those employees of Franchisee who have a need to know.

21. Plaintiff is further informed and believes, that pursuant to the franchise agreements, Defendants are required to maintain the restaurant buildings' interior and exterior, parking lots, and landscaped areas at each individual location in conformance with the specifications set forth in the OPM. The franchise document states:

**10. PERFORMANCE STANDARDS AND UNIFORMITY OF OPERATION**

**E. Upkeep of the Franchised Restaurant**

Franchisee shall constantly maintain and continuously operate the Franchised Restaurant and all furniture, fixtures, equipment, furnishings, floor coverings, interior and exterior signage, the building interior and exterior, interior and exterior lighting, landscaping and parking lot surfaces in first-class condition and repair in accordance with the requirements of the System, including all ongoing necessary remodeling, redecorating, refurbishing and repairs. In addition, Franchisee shall promptly and diligently perform all necessary maintenance, repairs and replacements to the Franchised Restaurant as HR may prescribe from time to time including periodic interior and exterior painting; resurfacing of the parking lot; roof repairs; and replacement of obsolete or worn out signage, floor coverings, furnishings, equipment and decor.

FDD, p.185.

22. Additionally, the Hardee's franchise agreements require remodeling, redecoration, structural changes, and modifications to the restaurants at Hardee's request. FDD, p. 180.

23. Plaintiff is further informed and believes, that pursuant to the franchise agreements, Defendants are required to maintain the restaurant buildings, drive thrus, parking lots, and landscaped areas at each individual location in conformance with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace the parking lot, curbs, driveways, and sidewalks on the leased property, as described in the OPM. The franchise document states:

> You must comply with all local, state and federal laws and regulations applicable to the operation of your Hardee's Restaurant, including health, sanitation, food handling, food preparation, waste disposal, smoking restrictions and advertising and point-of-sale disclosures, including statements concerning the nutritional and dietary characteristics of the food served at your Restaurant. **There are other laws and regulations applicable to businesses generally (including the Americans with Disabilities Act) with which you must comply.** You should consult with your attorney concerning all laws and regulations that may affect your Restaurant operations.

FDD, p.10 (emphasis added). Hardee's assumes no liability for the restaurants' non-compliance, stating, "HR assumes no liability or responsibility for: . . . (3) compliance with the Americans with Disabilities Act ("ADA"); or (4) compliance with any other applicable law." FDD, p. 111-112.

24. Plaintiff is further informed and believes, and based thereon alleges that, pursuant to the FDD, Defendants are to provide certain designated positions at their restaurant for corporate training known as the "Franchise Management Training Program ("FMTP")." FDD, p.181. The FDD states:

> The FMTP will include classroom instruction and training at HR's designated training facilities and/or at a designated System restaurant. Franchisee, the General Manager, a minimum of 6 Shift Leaders and any other employees hired by Franchisee to fill certain designated positions shall attend and satisfactorily complete each element of the FMTP specified by HR. Franchisee's Operating Principal (as defined in Section 13.G.) also shall attend and satisfactorily complete each element of the Franchise Management Training Program if not previously completed.

Due to the numerous number of locations and the significant geographic distances between them, Defendants manage compliance with their centralized policies, practices, and/or procedures concerning its daily outside maintenance obligations, and obligations to maintain, repair, and/or replace features within its Parking Areas, through an operating principal, who supervises general managers, and then individual restaurant managers. Plaintiff is informed and believes that collectively these employees are charged with overseeing the operation of Defendants' restaurants

8

for compliance with Hardee's policies through regular and complete inspections of Defendants' restaurants.

25. Defendants' centralized maintenance and operational policies, practices, and/or procedures have systematically resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

26. On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, and/or procedures, are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes and curb ramps:

a. 1311 Rose Street, LaCrosse, Wisconsin

   i. The purportedly accessible curb ramp located on the route to the building entrance had a flare exceeding 10.0%[1].

b. 1310 State Street, Lawrenceville, Illinois

   i. The purportedly accessible landing at the top of the curb ramp had a running and cross slope exceeding 2.1%.

c. 537 Gateway Avenue, Mauston, Wisconsin

   i. The purportedly accessible landing at the top of the curb ramp had a running and cross slope exceeding 2.1%.

d. 925 1st Street East Milaca, Minnesota

   i. The purportedly accessible curb ramp projected into an access aisle.

e. 151 County Road 120, St Cloud, Minnesota

---

[1] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10 i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

9
Case 2:23-cv-01637-SCD    Filed 12/06/23    Page 9 of 14    Document 1

   i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%[2].

 f. 605 US 18, Garner, Iowa

   i. The purportedly accessible curb ramp projected into an access aisle.

 g. 5232 North Brady Street, Davenport, Iowa

   i. The parking surface of one or more purportedly accessible parking spaces and access aisles within the Parking Area had slopes exceeding 2.1%.

27. As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing policies, practices and/or procedures, excessive sloping conditions will continue to reoccur in Defendants' facilities even after they have been remediated.

## JURISDICTION AND VENUE

28. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

29. Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

30. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

31. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who encountered excessive sloping conditions within the Parking Areas of any Northland Restaurant Group, LLC; and DOES 1 to 25 location.

---

[2] Pursuant to the ADAAG 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, i.e., 2.1%. *See,* 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

32. <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

33. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

34. <u>Common Questions of Fact and Law</u>:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

35. <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

36. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

# SUBSTANTIVE VIOLATION

## VIOLATION OF THE ADA, TITLE III

### [42 U.S.C. §§ 12101, *et seq.*]

**(Against all Defendants)**

37. Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

38. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of mobility. Accordingly, he is an individual with a disability defined by the ADA, 42 U.S.C. § 12102(2).

39. Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

40. Plaintiff is informed and believes, and based thereon asserts that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

41. The ADA and the franchise agreements require the accessible features of Defendants' facilities, which include Parking Areas of its facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

42. The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that caused them to be readily accessible to and usable by individuals who use wheelchairs in the first instance and/or after that were not maintained or operated to ensure that they remained accessible to and usable by individuals who use wheelchairs.

43. Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

44. Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify its existing procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

45. Defendants' conduct is ongoing and continuous, and Defendants' conduct has harmed Plaintiff.

46. Unless Defendants are restrained from continuing its ongoing and continuous course of conduct, Defendants will continue to violate the ADA and inflict injury upon Plaintiff and the class.

47. Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and prospective injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR DECLARATORY JUDGMENT AND PROSPECTIVE INJUNCTIVE RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for:

a. A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii) directs Defendants to modify its existing policies, practices and/or procedures to prevent the reoccurrence of excessive sloping

conditions in the Parking Areas of its facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c. An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d. Payment of costs of suit;

e. Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f. The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: December 6, 2023

Respectfully Submitted,

*/s/ John Blythin*
John D. Blythin (SBN: )
**ADEMI LLP**
3620 E. Layton Avenue
Cudahy, WI 53110
Phone: (414) 482-8000
jblythin@ademilaw.com

*Liaison Counsel for Plaintiff and the Class*

Jordan T. Porter
**NYE, STIRLING, HALE, MILLER & SWEET LLP**
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: 805-963-2345
jordan@nshmlaw.com

Benjamin J. Sweet
Callum T. Appleby
**NYE, STIRLING, HALE, MILLER & SWEET LLP**
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Phone: 412-857-5352
ben@nshmlaw.com

*Lead Counsel for Plaintiff and the Class*